# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Annette D. Stamm, | : | Case No. 1:07CV0081 |
| Plaintiff | : | Judge Peter Economus |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claim for supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his/her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.[1]

Plaintiff's SSI application was received on August 21, 2003, but was granted a protective filing date of July 30, 2003 when she contacted a Social Security field office by telephone, and claimed an onset date of disability of November 1, 2000.[2]

Upon denial of plaintiff's claim on the state agency level hearing de novo before an

---

[1] Although the plaintiff applied for, and was denied both SSI and disability insurance benefits (DIB), 42 U.S.C. §§416(i) and 423, she is not seeking judicial review of the DIB denial.

[2] The plaintiff's brief states that she alleged disability "due to back pain, depression and post traumatic stress disorder ('PTSD')." However, the citations with regard thereto are to the plaintiff's DIB and SSI applications, neither of which call for or contain a statement of the basis of the claimant's alleged disability. This record does not contain a "Disability Report - Adult" form, which this Court customarily finds in these appeals, which does call for that information.

Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on December 5, 2005. Also testifying at that proceeding was a vocational expert, Ms. Deborah Lee.

At that hearing, while not particularly articulate in describing her situation, it is clear that, along with some physical problems which are not at issue on this appeal, the plaintiff ascribed her alleged inability to work to emotional problems. When first asked by her counsel to describe her psychological state she responded:

> Have [sic] the time I don't want to wake up. Half the time I don't want to live. Half the time I don't care about things. I do, do some stuff around the house, but it's more like my boyfriend push me into it. You know, come on you got to do dishes. Come on you got to do this. Just keep me going. I don't like to go anywhere for myself. I'm petrified to be by myself for fear that somebody's going to hurt me or for fear that I don't know where I'm at. Or I get, just totally messed up.

At a later point in her testimony, when questioned by the ALJ, she stated:

> Q. So in terms of being able to work full time, what do you feel your greatest problem with that would be? If it was a job that didn't require heavy lifting like at Gourmet Foods?
>
> A. I don't do well with instructions as in, more or less I have to be constantly supervised.
>
> Q. And why —
>
> A. And getting—Well, I'm very poor getting along with people. Especially if they upset me or a situation like that came about it would, I'd just walk off the job. And sometimes I get disoriented. I don't know what I'm doing.
>
> Q. Okay. Have you been fired from a lot of jobs?[3]

---

[3] The plaintiff has a sporadic history of relatively short term jobs.

2

    A.       No, I've quit. If they start talking, you know you need to do this and this. And I'll explain to them look I'm trying my best and it's my medical condition that I'm doing the best I can and they would say well you got to do it this way or you got to do better. And I'll just tell them well it'll be best if I don't work anymore cause I'm doing the best I can to my ability.

On February 15, 2006 the ALJ entered his opinion denying plaintiff's claim. That decision became defendant's final determination upon denial of review by the Appeals Council on November 9, 2006. His Findings, which represent the rationale of decision were:

1. Ms. Stamm met the disability insured status requirements of the Act on November 1, 2000, the date she allegedly became unable to work, and continued to meet them only through September 30, 2001.

2. Ms. Stamm has not engaged in substantial gainful activity at any relevant time.

3. Prior to December 2001, the record contains no evidence of a medically determinable severe impairment.

4. From December 2001 through the date of this decision, Ms. Stamm suffers from depressive disorder, which is a severe impairment.

5. Ms. Stamm has no impairment, either individually or in combination, that meets or that is medically equivalent to the criteria of any impairment listed in appendix 1, subpart P, 20 C.F.R. part 404.

6. Ms. Stamm's assertions concerning her ability to work are credible only to the extent of the limitations of her residual functional capacity.

7. Ms. Stamm retains the residual functional capacity to do a range of work with no exertional limitations (20 C.F.R. §§404.1567, 416.967). Her mental impairments impose non-exertional limitations. Specifically, she is restricted to simple, repetitive tasks; superficial interaction with the public and co-workers, no negotiation or confrontation, and no production rate pace work or piece work.

8. Ms. Stamm is unable to perform her past relevant work.

9. Ms. Stamm has been a younger person at all relevant times.

10. Ms. Stamm has a high school education.

11. The issue of transferability of work skills is not material.

12. If Ms. Stamm could do the full range of work, a finding of not disabled would be directed by Medical-Vocational Rule 204.00. She cannot perform the full range of work, however, because of her non-exertional limitations. Considering her age, education, work experience, and residual functional capacity within the framework of Medical-Vocational Rule 204.00, there are a significant number of jobs in the national economy as a cook helper and housekeeping cleaner to which she can be expected to make a successful vocational adjustment.

13. Ms. Stamm has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision. 20 C.F.R. §§40-4.1520(c) and 416.920(g).

The ALJ's decision in this case is plainly contrary to the opinion of the plaintiff's treating psychiatrist, Dr. Daniel Ionescu, as regards his patient's ability to engage in substantial gainful work activities. It is also contrary to the conclusion reached by a clinical psychologist, Dr. Mitchell Wax, who evaluated the plaintiff in December 2003 upon referral of the Social Security authorities.

Under date of August 4, 2004, shortly after the plaintiff transferred to Dr. Ionescu from another psychiatrist at the MetroHealth System hospital where she received her care, Dr. Ionescu completed a "Medical Source Statement: Patient's Mental Capacity Form." Therein he noted that the plaintiff's capacities in the following areas were "poor or none: Follow work rules; maintain attention and concentration for extended periods of 2 hour segments; respond appropriately to changes in routine setting; maintain regular attendance and be punctual within customary tolerances; relate to co-workers; function independently without special supervision; work in coordination with

or proximity to others without being unduly distracted or distracting; deal with work stresses; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and, behave in an emotionally stable manner.  He stated as his basis for these conclusions "pt. has persistent symptoms of major depressive disorder and post traumatic stress disorder that may severely interfere with her ability to perform in a workplace.  These conditions are chronic."

About a year later (August 18, 2005) he completed another such form.  Again he rated her at poor or none in several of the categories he had assessed in 2004, most notably the ability to deal with work stresses and to complete a normal workday/work week without interruption, as well as relating to co-workers and supervisors and behaving in an emotionally stable manner.  His diagnostic findings were "Pt. is suffering from persistent and recurrent symptoms of depression, as well as symptoms related to post traumatic stress disorder—flashbacks, avoidance, irritability, rambling.  She has very limited interpersonal skills in stressful situations."

Although as a one time consultant Dr. Wax's assessment of the plaintiff is not entitled to the same weight as the opinion of a treating physician, his conclusion as to the plaintiff's employability is not only consistent with that of Dr. Ionescu, it was even more dire.  Dr. Wax diagnosed the plaintiff as suffering from "Major depression severe with psychotic features," assigned her a GAF of 31, which connotes "inability to function in almost all areas" and unequivocally stated that the plaintiff "is not able to work."

In Wilson v. Commissioner of Social Security, 378 $.3d 541 (6th Cir. 2004), the court addressed what is commonly referred to as the "treating physician role," which essentially provides that the opinion of a treating physician, if supported by clinical or diagnostic findings, is entitled to

substantial deference, and if not contradicted complete deference, see, Howard v. Commissioner of Social Security, 276 F3d 235, 240 (6th Cir. 2002), and what an ALJ must due if he/she declines to follow the opinion of the treating source. Reduced to its bare essentials, the holding of Wilson is that the ALJ must provide a statement of "good reasons" for not giving significant weight to the opinion of the treating source, which are sufficiently clear to make clear to a reviewing court the ALJ's reasoning and to let the claimant understand why he/she has been told by an administrative bureaucracy that he/she is not disabled when his/her physician has said that he/she is disabled. Id., at 544-545. This holding requires the ALJ to state a "good reason," not simply any reason or an insubstantial reason.

The ALJ's basis for rejecting Dr. Ionescu's opinions was that he found them to be inconsistent with the doctor's treatment notes which reflected that her "condition was stable and diagnosed her depressive disorder as being in partial remission." He also stated that "Dr. Ionescu's August 2005 opinion indicates that Ms. Stamm's condition improved such that she had fair capacity to perform a variety of work functions for which she had no or poor ability in his August 2004 assessment."

In this Court's opinion neither of these rationales satisfies the "good reason" standard.

While it is true that in his 2004 statement Dr. Ionescu had noted the plaintiff's capabilities at "fair" in there categories and "poor or none" in nine while in 2005 he had her at "fair" in seven and "poor or none" in five, that does not alter the fact that he continued to rate her at poor to none in the ability to relate to co-workers and interact with supervisors and, most importantly, in the abilities to deal with work stresses, complete a normal workday/work week and to behave in an emotionally stable manner. It also does not alter the fact that he stated in both reports that the

plaintiff suffers from a major depressive disorder and post traumatic stress disorder.

With regard to Dr. Ionescu's patient notes, what the ALJ conveniently omitted is that in the series of patient notes, which are quite similar, the word "stable," which appears in the "Assessment" portion of the notes, is immediately followed by the words "but stressed" in each instance.  Therefore, to say that Dr. Ionescu considered the plaintiff to be "stable" is a misleading half truth.  Equally important, the fact that the plaintiff was "stable" simply means that she was no different than when last seen, no worse but not better, which has no bearing on whether that unchanged condition would permit the stressed individual to work.  Putting it quite simply, she could well be a stable, stressed mess, who would decompensate if put into a work setting.

By the same token the diagnosis of "Major depression, recurrent partial remission [296.35]" references a diagnosis code of the Diagnostic and Statistical Manual, a resource utilized by mental health professionals, and does not connote that the plaintiff's depression was at a level which would permit her to function in a workplace setting.

The vocational expert testified that if the opinions of Dr. Ionescu and Dr. Wax were credited the plaintiff would be unemployable.  As this Court finds that the ALJ's rejection of Dr. Ionescu's opinions is inconsistent with the <u>Wilson</u> decision and violative of the treating physician's rule, it follows that the ALJ's decision cannot stand and that the plaintiff is entitled to the benefits she seeks.

It is, therefore, recommended that final judgment be entered in plaintiff's favor finding that she was disabled as of her application date, and remanding the matter to the defendant for a determination of her entitlement to SSI thereafter based upon her satisfaction of the economic criteria

pertinent thereto.

>                                                   s/DAVID S. PERELMAN
>                                                   United States Magistrate Judge

DATE:   October 11, 2007


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).